Hárper, J.
I entirely concur in the argument of the prisoner’s counsel, that neither this, nor any other Court, has power to alter an established rule of law, or to supply a rule, where the law is deficient. That is the business of legislation, and not of Courts, whose office is merely to expound the law. There is, to be sure, a sort of judicial legislation, as it has been called, which is inevitable and legitimate. In the progress of society, from a state of more simple, to one of more complicated relations, general principles must be pursued to their consequences; and subordinate rules deduced from those which are more general. Perhaps no case is decided, which does not furnish grounds for the' decision of other cases, differing in some degree from it, by fair and necessary induction. In this way, a system of laws, once simple may be carried out, and adapted to the infinite variety of human transactions. But this is improperly called legislation ; as new cases arise they must be decided by induction and analogy; this, however, is not the making, but the expounding of law. If the *109 rule be clear and settled, we are not authorized to depart from it, because we may not approve the reason, upon which it was founded; or, because a change of circumstances has rendered that which was once useful and politic, no longer so. The law maxim, ces-sante raiione, cessat et ipa lex, has been often misunderstood. That, is not a rule for determining the authority of laws, but a rule of construction. The case putby Blackstone, 1 Com. 61, will illustrate this. “ There was a law that those who, in a storm, forsook the ship, sho uld forfei t all property therein; and th at th e ship and lading should belong entirely to those whq staid in it. In a dangerous tempest, all the mariners forsook the ship, except only one sick passenger, who, by reason of his disease, was unable to get out and escape. By chance the ship came safe to port. The sick man kept possession, and claimed the benefit of the law. Now, here, all the learned agree, that the sick man is not within the reason of the law; for, the reason of making it, was to give encouragement to those who should venture their lives, to save the vessel; but this is a merit which he could never pretend to, who neither staid in the ship, upon that account, nor contributed any thing to its preservation.” But suppose, that, in consequence of the encouragement thus given, an abuse of a different sort had arisen, and men had been induced to venture their lives, recklessly out of avarice, to the public detriment. Courts would not have been authorized to disregard the law, while it continued unrepealed, because they no longer approved its policy, or because the reasons which induced its enactment, in their opinion, no longer existed. If Courts were at liberty to disregard settled rules of law, because they had their origin in barbarous times, and were unsuitable to a more refined age; because they were founded on insufficient or mistaken reason, or because a change of circumstances had rendered them useless or inconvenient, this would leave' room for unlimited discretion. Every judge would set his own reason above that of his predecessors, *110 an(^ that miserable servitude would be brought about, which is the result of the law’s being uncertain or un~ known.
Those are generally loudest in their censure of judicial legislation, who are most impatient that Courts do not legislate recklessly, and make the whole system of laws what, according to their conceptions, it ought to be.
It is to be remarked, however, that reports of decided cases, are only evidence of what the law is. If these cases be doubtful or contradictory, we may be aided in coming to a correct determination, by considering the reason of the law, and how far the particular point decided is in conformity to a general principle ; and though a particular course of decision may have obtained, for a long time, in the English Courts, we may be justified on these considerations, in going back to what appears to be the true doctrine. If the decisions however have been always clear, certain and uniform, I do not perceive upon what authority we can be at liberty to depart from them.
With respect to the point, we are more particularly considering in the present case, and which constitutes the first ground of the motion for a new trial, the decisions do appear to me to have been of this character. The cases have differed as to the grounds and reasons of the determination; the decisions have been criticised as being incongruous with the general rule on the subject of a witness’ interest; yet the decisions themselves have been, I believe, without exception, that “the party by whom the instrument purports to be made, cannot be called to prove that it is fictitious, if he would be liable to be sued on it if genuine, or if he would be deprived of any claim upon another, by its being established to be valid,” until it was found necessary to alter the law upon the subject by the Stat. 9, Geo. 4. Such, so far as I can learn, has been the uniform practice of our own Courts, though a different opinion was intimated, obiter, in the case of the State v. Hinson.
*111 Under these circumstances, we think it better to adhere to the rule, leaving to the legislature to amend the law, if it requires amendment.

The motion for new trial is granted.